# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

WILLIAM GEORGE WATT, III,

                Plaintiff,

-vs-                                    Case No.  2:11-cv-132-FtM-SPC

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____

# ORDER[1]

      This matter comes before the Court on Plaintiff William George Watt III's Complaint, seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's claim for disability insurance (Doc. # 1) filed on March 11, 2011. The Plaintiff filed his Memorandum in Support of the Complaint (Doc. # 18) on July 22, 2011. The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. # 19) on September 20, 2011. Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] Consent Form (Doc. # 13) was signed by the Parties indicating their agreement for jurisdiction in this matter to be exercised by the United States Magistrate Judge. The Parties' consent was approved by the District Court on May 23, 2011. (Doc. # 14). Therefore, the Court's ruling shall reflect a final judgment in this Order.

## <u>FACTS</u>

### *<u>Procedural History</u>*

The Plaintiff filed a Title II application on January 29, 2007, for Supplemental Security Income (Tr. 126-33), which the Social Security Administration (SSA) denied initially on March 14, 2007, and upon reconsideration on December 7, 2007. (Tr. 16). On January 25, 2008, Plaintiff filed a written request for hearing. (Tr. 16). On March 9, 2009, the ALJ held a hearing in Washington, D.C., and on July 13, 2009, the ALJ found that Plaintiff was not disabled. (Tr. 1-16). On January 26, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff challenges the ALJ's finding that he could perform light work and was therefore not disabled, and appeals the decision denying benefits under 42 U.S.C. § 1383(c)(3).

### *<u>Plaintiff's History</u>*

On the date he filed his application, Plaintiff was 39 years old. (Tr. 126). Plaintiff was 44 years old when the Administrative Law Judge (ALJ) issued his decision on July 13, 2009, and was considered a "younger individual." (Tr. 24, 126). Plaintiff has past relevant work history as an electrician for a company and also as an independent contractor. (Tr. 34). Plaintiff has a high school diploma and completed an apprenticeship program to become an electrician. (Tr. 33). He alleges an onset date of disability of May 1, 2004. (Tr. 126-33). Specifically, Plaintiff alleges disability due to arthritis, neuropathy, neck and back pain, and diabetes. (Tr. 126, 142).

### *<u>Medical and Psychological History</u>*

### *<u>Virginia Hospital Medical Center – Hospitalization, Diabetic Ketoacidosis</u>*

Plaintiff presented to the emergency department of Virginia Hospital Center in Arlington, Virginia on January 18, 2006, with nausea and vomiting as well as altered mental status. (Tr. 233). He had a history of diabetes and alcohol and cocaine abuse. (Tr. 233). He was found to be in diabetic

ketoacidosis and was admitted to the Intensive Care Unit. (Tr. 233). He was treated with an insulin drip and required heavy sedation due to his agitated demeanor. (Tr. 234). Diagnostic testing, including a brain CT scan and a chest x-ray which were within normal limits. (Tr. 334-40). An EKG showed sinus tachycardia, and a drug screen was positive for cocaine. (Tr. 339, 234). Plaintiff was discharged nine days later on January 27, 2006, with the diagnosis of diabetic ketoacidosis and hyperglycemia on admission, uncontrolled diabetes, and history of cocaine abuse with positive toxicology screen for cocaine. (Tr. 235). He was referred to the free clinic for continued outpatient care. (Tr. 234).

### *Dr. Wei Liu – Treating Internist*

Dr. Wei Liu, an internist, has served as Plaintiff's primary treating physician since March of 2006, after his discharge from Virginia Hospital for diabetic ketoacidosis. (Tr. 411-25). On initial evaluation on March 29, 2006, Plaintiff complained of bilateral leg swelling, back numbness, chronic neck pain sometimes radiating into the arms, right hand "paralysis" since the preceding October; chronic generalized pain, joint pain, and bilateral leg pain with walking long distances. (Tr. 411). X-rays of the cervical spine dated April 6, 2006, showed minimal degenerative changes at C5-6. (Tr. 372).

In May of 2006, he had knee pain due to yard work the day before. (Tr. 416). On July 7, 2006, he complained of continued back and leg pain and generalized heaviness. (Tr. 418). He was referred to physical therapy. (Tr. 418). On July 11, 2006, and October 5, 2006, it was noted that he was not measuring his blood sugars regularly. (Tr. 419-20). His wrist, shoulder, and neck pain persisted, as did his depression. (Tr. 420). Dr. Liu started him on Paxil. (Tr. 420).

On January 24, 2007, Plaintiff admitted to taking cocaine and alcohol between December 1, 2006 and January 1, 2007. (Tr. 422). Celexa was substituted for Paxil. (Tr. 422). On January 29,

2007, his diabetes was uncontrolled "due to non-compliance" with his prescribed medication regimen. (Tr. 423). In a Range of Motion Form proffered by the State agency and completed on February 23, 2007, Dr. Liu affirmed Plaintiff's diagnoses of diabetes mellitus, high cholesterol, depression, and chronic back and shoulder pain, noting that all of the ranges of motion in his extremities and spine are "all normal." (Tr. 408-10). On April 10, 2007, his diabetes was still uncontrolled, with Dr. Liu positing that he may have brittle diabetes. (Tr. 444).

In a letter dated August 1, 2008, Dr. Liu affirmed his treatment of Plaintiff and that, in his opinion, he is "totally disabled without consideration of any past or present drug and/or alcohol use" and that such use "is not a material cause of [his] disability." (Tr. 498).

### *Dr. Kivanc and Dr. Goldman – Treating Rheumatologists*

Plaintiff presented to rheumatologist Dr. Mert Kivanc on March 6, 2007, complaining of bilateral wrist pain and trigger finger in the right thumb. (Tr. 435). He was prescribed Mobic and Lyrica as well as occupational therapy. (Tr. 435). Blood tests dated March 7, 2007, were positive for rheumatoid factor. (Tr. 433). X-rays of the wrists dated March 14, 2007, were unremarkable. (Tr. 434). On December 12, 2007, February 6, 2008, and June 3, 2008, he was said to have had a "good response" to Arthrotec and Lyrica and that they were "helping." (Tr. 484-85).

In a Medical Evaluation form dated December 12, 2007, rheumatologist Robert Goldman, who shares a practice with Dr. Kivanc, found that as of his most recent examination on that same date, Plaintiff was unable to participate in employment and training activities in any capacity; that he is physically limited by decreased grip strength and pain in his legs with prolonged standing, and mentally limited by depression; he has been diagnosed with peripheral neuropathy, osteoarthritis, and carpal tunnel syndrome as well as depression; and he has been compliant with all prescribed treatment modalities. (Tr. 463, 465).

In letters dated February 6, 2008, and March 14, 2008, Dr. Goldman affirmed that he has been treating Plaintiff for diabetic cheiropathy, erosive osteoarthritis, trigger finger, carpal tunnel syndrome, and peripheral neuropathy, all of which "severely affect his hands." (Tr. 467-68). Dr. Goldman found Plaintiff to be "totally disabled" and "unable to perform any type of work for at least one full year." (Tr. 467-68).

On June 24, 2008, Dr. Goldman completed a Bilateral Manual Dexterity Impairment Questionnaire on the basis of his treatment of Plaintiff every two to three months since March of 2007, and most recently on June 3, 2008. (Tr. 470-75). He affirmed the above-noted diagnoses, which are supported by clinical findings of reduced grip strength, tenderness, swelling, loss of sensation, and loss of fine coordination in both hands. (Tr. 470). He estimated that Plaintiff could occasionally lift up to ten pounds, occasionally carry up to five pounds, and that Plaintiff is markedly limited in his ability to grasp, turn, twist, or perform fine manipulations with either hand. (Tr. 472, 474).

### Dr. Segall and Karen Thomas – Treating Psychiatrist, Therapist

Plaintiff began outpatient therapy with Dr. Errol Segall, a psychiatrist, in August of 2007, for symptoms of depression. (Tr. 520-25). On August 21, 2007, an examination by Dr. Segall reported that Plaintiff has a history of depression as well as cocaine and alcohol abuse, and Plaintiff is currently ten months in remission. (Tr. 524-25). He complained of decreased motivation and energy, poor sleep, difficulty concentrating, and increased use of cigarettes with a sense of "guilt" and "shame." (Tr. 524). Exam showed a serious and pained look with an adolescent appearance, a depressed mood, and feelings of futility and despair. (Tr. 524-25). Dr. Segall diagnosed depression and polysubstance abuse, primarily stimulants, for which he prescribed Zoloft to be increased up to 150 milligrams and also prescribed Klonopin for sleep. (Tr. 525).

On September 24, 2007, Plaintiff reported ongoing trouble getting motivated and a lack of interest, but better control of his blood sugar levels. (Tr. 523). Dr. Segall's examination showed the "same flat appearance." (Tr. 523). Dr. Segall diagnosed Plaintiff with a mood disorder not otherwise specified and cocaine dependence in remission. (Tr. 523).

On October 22, 2007, Plaintiff reported being on probation for possession of cocaine and that he still had little motivation, decreased interests, and "a lot of regrets." (Tr. 522). He was "sad appearing." (Tr. 522). Dr. Segall continued the Zoloft and added Ritalin. (Tr. 522). On November 19, 2007, his affect was "flatish" but not depressed, and the Ritalin and Zoloft were continued. (Tr. 521). On January 4, 2008, Plaintiff reported having discontinued Ritalin for having made him anxious but continued on Zoloft. (Tr. 520). Plaintiff was diagnosed with dysthymia/depression. (Tr. 520).

On September 9, 2008, Dr. Segall completed a Psychiatric/Psychological Impairment Questionnaire on the basis of his treatment of Plaintiff every few months for what he had diagnosed as depression and alcohol and cocaine abuse in remission for over one year. (Tr. 512-519). He assessed his GAF at 40,[2] both currently and in the preceding year. (Tr. 512). He found Plaintiff to be "markedly limited" in his abilities to: maintain attention and concentration for extended periods; to perform activities within a schedule; to maintain regular attendance and be reasonably punctual; to complete a normal workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without rest periods of unreasonable length and frequency; and to respond appropriately to changes in the work setting. (Tr. 515-17). Dr. Segall added that Plaintiff is "easily overwhelmed, leading to regression" of his emotional symptoms. (Tr. 517). Plaintiff would be

---

[2] According to the American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. 2000, Text Rev.) a GAF of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoid friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

capable of tolerating no more than a "low stress" work environment, and that he would likely miss more than three workdays a month due to his symptoms. (Tr. 518-19).

Karen Thomas, a licensed clinical social worker, also submitted questionnaire responses based on her treatment of Plaintiff since February of 2007. (Tr. 501-08). She originally saw him on a weekly basis. (Tr. 39, 501). Ms. Thomas endorsed marked limitations in the same areas of mental function as did Dr. Segall, also finding that Plaintiff would be markedly limited in his ability to set realistic goals, make plans independently, accept instructions and respond appropriately to criticism from supervisors, and remember work procedures and locations. (Tr. 501-08).

### *Administrative Law Judge's Decision*

The Administrative Law Judge C. J. Sturek issued his "Notice of Decision – Unfavorable" on July 13, 2009. (Tr. 16-25). The Judge's specific findings were as follows:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.      The claimant has not engaged in substantial gainful activity since May 1, 2004, the alleged onset date (20 C.F.R. 404.1571 *et seq*.).

3.      The claimant has the following severe impairments: diabetes mellitus and peripheral neuropathy, right thumb trigger finger, depression, and history of drug and alcohol abuse (20 C.F.R. 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the (ALJ) finds that the claimant has the residual functional capacity to perform less than a full range of light and sedentary work, as

defined in 20 C.F.R. 404.1567(b), except that he is able to walk/stand (with normal breaks) at least 2 hours/8 hour day, but only for 10-15 minutes at a time; can occasionally climb, balance, bend or stoop, kneel, crouch or squat, crawl, reach overhead, and finger; must avoid concentrated exposure to hazards, such as moving machinery and unprotected heights; and has a moderate[3] limitation, due to pain, fatigue, the effects of medication, and depression, in the ability to concentrate, maintain attention for extended periods, [and] keep up a pace.

6.      The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.      The claimant was born on April 18, 1965 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.      Transferability of job skills is not material to the determination of disability because, applying the Medical Vocational Rules directly, supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2004 through the date of this decision (20 C.F.R. 416.1520(g)). (Tr. 8-18).

Plaintiff appealed the decision of the Administrative Law Judge to the Appeals Council, but the Appeals Council declined review by order dated January 26, 2011. (Tr. 1-6). This left the

---

[3] "Moderate" means that there is more than a slight limitation as to the performance of an activity, but that the individual is still able to function satisfactorily with regard to it.

ALJ's decision as the final decision of the Commissioner. Plaintiff then filed his Complaint in this Court pursuant to 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. <u>Hibbard v. Comm'r</u>, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulation.[4] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." <u>Hibbard</u>, 2007 WL 4365647 at *2 (citing <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838B39 (11th Cir. 1982))); <u>Richardson</u>, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[4] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237-40 (11th Cir. 2004); <u>Foote v. Chater</u>, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 -

404.1511).   To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff sets forth three main issues.   First, Plaintiff asserts that the ALJ committed harmful error in rejecting the opinion of the Plaintiff's treating physician, Dr. Goldman, and failed to provide good cause for rejecting the opinion.   Also, Plaintiff asserts the ALJ erred in rejecting Plaintiff's Residual Functional Capacity (RFC) assessments of Dr. Segall and treating therapist Karen Thomas.   Second, Plaintiff asserts the ALJ's RFC finding is not supported by substantial evidence of record in regards to his functional limitations.   Third, Plaintiff claims the Vocational Expert's (VE) testimony concluding that Plaintiff can perform alternate jobs is unsupported by substantial evidence.   In response, the Commissioner argues the ALJ's decision is supported by substantial evidence in the record and, therefore, should be affirmed.   The Court will consider each of these issues in turn.

*(1) Whether the ALJ Gave Proper Weight to Each of the Treating Physicians*

*(a) Dr. Robert Goldman, D.O., Treating Rheumatologist*[5]

Plaintiff argues that the ALJ committed harmful error in rejecting the opinions of treating rheumatologist, Dr. Robert Goldman.   As grounds, Plaintiff cites to the ALJ's opinion arguing that the ALJ failed to show good cause to reject Dr. Goldman's assessment.   (Doc. # 18, p. 10).   Plaintiff further argues that "Dr. Goldman, or Dr. Kivanc, another rheumatologist in his office, had only examined Plaintiff on [four] occasions, [however] those examinations were also bolstered by objective laboratory testing."   Plaintiff states that the record contains no contrary opinions from

_____

[5]  The Court will consider the ALJ's assessment of Dr. Goldman, and his partner, Dr. Kivanc together, as the Plaintiff only contests Dr. Goldman's opinion as the treating rheumatologist.

any other treating source, and Dr. Goldman was competent to opine on Plaintiff's ability to function. (Doc. # 18, p. 12).

In response, the Commissioner argues that Dr. Goldman did not provide any objective clinical findings to support his disability opinion. (Doc. # 19, p. 6-8). Specifically, the treating relationship with Plaintiff was brief, and the majority of Dr. Goldman and Dr. Kivanc's notes were notations of Plaintiff's subjective complaints, history, diagnoses, orders for therapy, x-rays, and medications. "Thus, the ALJ properly gave Dr. Goldman's opinion of disability little weight." (Doc. # 19, p. 8; Tr. 23).

Under 20 C.F.R. § 416.946(c), the regulations give responsibility to the ALJ in assessing a Plaintiff's RFC, and thus entitle the ALJ to discount portions of the record after considering the record as a whole. Id. at §§ 416.913(b), 416.927, and 416.945. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise (20 C.F.R. § 404.1527 (d)); Lewis, 125 F.3d at 1439-41; Sabo v. Comm'r of Soc. Sec., 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). If a treating physician's opinion on the nature and severity of a Plaintiff's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight (20 C.F.R. § 404.1527 (d)(2)).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence, supports a contrary finding, or is wholly conclusory. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (ALJ properly discounted treating Physician's report where the physician was unsure of the accuracy of his findings and statements); Morrison v. Barnhart, 278 F. Supp. 2d. 1331, 1334 (M.D. Fla. 2003). Where a

treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a Plaintiff's impairments.  Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion (20 C.F.R. § 404.1527 (d)). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion (20 C.F.R. § 404.1527 (d)(2)); Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984). Furthermore, should the ALJ discount the treating physician's opinion he must clearly articulate the reasons for giving less weight to the opinion, and failure to do so is reversible error. Morrison, 278 F. Supp. 2d. at 1334.

Additionally, the ALJ is required to review all of the medical findings and other evidence that supports a Medical Source's Statement that a Plaintiff is disabled. However, the ALJ is responsible for making the ultimate determination about whether a Plaintiff meets the statutory definition of disability (20 C.F.R. § 404.1527(e)).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the Plaintiff meets a listed impairment, a Plaintiff's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner (20 C.F.R. § 404.1527(e)).

In assessing Dr. Goldman's opinions, the ALJ determined some opinions to be unsupported, or inconsistent with other substantial evidence in the record. In his decision:

> …the (ALJ) considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSRs 96-4 and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 22).

The ALJ further states:

> [a] medical evaluation provided by Robert Goldman, D.O., of the Department of Social Services, found that claimant suffered from peripheral neuropathy, osteoarthritis, carpal tunnel syndrome, ["which severely affects his hands"] and depression. [Also that] claimant was compliant with his medical treatment and medications…claimant was not able to participate in employment and training activities in any capacity since December 12, 2007… Dr. Goldman further opined that claimant was totally disabled and unable to perform any type of work for at least one full year. (Ex. 17F, 18F, 19F, and 20F; Tr. 19).

In accordance with these findings, the ALJ stated in his decision, "[l]ittle weight is given to the opinion of Dr. Goldman." (Tr. 21). The ALJ reasoned that the treatment history was brief, the x-rays taken of the wrists and hands, which were normal, clearly contradict what the doctor has opined. (Tr. 23). Further, the ALJ found that Dr. Goldman's opinion which declared that Plaintiff was totally disabled is possibly attributed to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision. (Tr. 23).

It is clear in this case that the ALJ did not give great weight to Dr. Goldman's opinion because there was good cause to do otherwise. The ALJ articulated his reasoning for giving less weight to this treating physician's opinion when he stated Dr. Goldman's findings clearly contradict objective medical evidence. (Tr. 23).

Further, Plaintiff's principal argument is that the ALJ "granted *no* weight to rheumatologist Goldman's assessments, [and although the ALJ] cited three rationales for so doing, none of them amounts to the "good cause" the law requires. (Doc. # 18, p. 11). The ALJ did grant weight to the opinion of Dr. Goldman, but it was only to the extent that it was consistent with the other medical findings of record, and in this case, Dr. Goldman was granted "little weight." (Tr. 23). The ALJ considered Dr. Goldman's opinion noting:

> Claimant was totally disabled an unable to perform any type of work for at least one year. Although the doctor stated the claimant is "disabled," it is not clear that the doctor was familiar with the definition of "disability" contained in the Social Security Act and regulations. Specifically, it is possible that the doctor was referring solely to an inability to perform the claimant's past work, which is consistent with the conclusions reached in this decision. (Tr. 23).

Therefore, because the ALJ has clearly articulated reasons for granting little weight to Dr. Goldman's opinions, and because good cause was shown in granting such weight, the ALJ properly determined Plaintiff's RFC. Furthermore, because the ALJ assessed other factors in making his ultimate RFC determination, such as the opinion of Dr. Liu and the x-rays taken by Dr. Goldman which showed the Plaintiff's wrist and hands were normal, he properly granted little weight to Dr. Goldman's opinion of disability.

### (b) Dr. Errol Segal, M.D., Treating Psychiatrist and Dr. Karen Thomas, LCSW, Treating Therapist

Plaintiff argues that the ALJ invalidly rejected the residual mental functional capacity assessments of Dr. Errol Segall and Licensed Clinical Social Worker, Karen Thomas (Dr. Thomas).[6] As grounds, Plaintiff states that the ALJ's reasoning for a finding of good cause to

---

[6]     Karen Thomas has a PhD in social work. The ALJ and the Commissioner refer to Dr. Thomas as Ms. Thomas throughout their respective brief and decision. However, the Court will address her as Dr. Thomas in the body of the Order, but will continue to use Ms. Thomas when quoting directly from the ALJ's decision or the Commissioner's Brief.

grant little weight to the doctor's opinion was legally insufficient. Specifically, Plaintiff argues that Dr. Segall examined Plaintiff on five occasions over one year and the ALJ improperly found that "the treatment history [was] quite brief." (Tr. 24). Plaintiff also claimed the ALJ erred in giving Therapis Thomas little weight because of a misconception that Thomas was a consultative source and not a treating therapist whom had been treating Plaintiff weekly since February of 2007. (Doc. # 18, p. 13; Tr. 23).

In response, the Commissioner argues that "the record is notably absent of any treatment records or progress notes from Ms. Thomas," including notes that would support Plaintiff's GAF of 36. Furthermore, the Commissioner states, "as a social worker, Ms. Thomas is not considered an acceptable medical source and, therefore, her opinion was not entitled to any special deference or consideration." (See 20 C.F.R. §§ 404.1513(a), 404.1527; Doc. # 19, p. 10). The Commissioner also argues that "any mischaracterization regarding Ms. Thomas' referral from Plaintiff's representative amounts to harmless error…[because she] is not considered an acceptable medical source, and her opinion was not entitled to any special deference or consideration." (Doc. # 19, p. 10).

In support of his RFC determination, the ALJ granted little weight to the opinions of Dr. Segall and Dr. Thomas. In his determination, with regards to Dr. Segall, the ALJ states:

> Errol Segall, M.D. completed a psychiatric/psychological impairment questionnaire relating to treatment between August 21, 2007 through September 9, 2008, for depression and alcohol and cocaine abuse – in remission. Claimant had no hospitalizations or emergency room treatments for these conditions; was noted to have moderate limitations in understanding and memory; moderate limitations in sustaining concentration and persistence; mild limitations in social interactions; and mild adaptation…[he is] incapable of low stress. Dr. Segall opined that the earliest date the description of symptoms and limitations occurred was in 2005. (Ex. 23F; Tr. 20).

In assessing the opinion of Dr. Segall, the ALJ granted little weight to his findings because "while the doctor does have a treating relationship with the claimant, the treatment history is quite brief." (Tr. 24). This conclusion is supported by the record, which indicates that Dr. Segall had only seen Plaintiff after his initial visit on four occasions, with each session lasting only twenty minutes. (Tr. 520-23). Therefore, the ALJ's findings were consistent with granting little weight to Dr. Segall's opinions.

The ALJ also considered Dr. Thomas' questionnaire in making his RFC determination. In granting Thomas little weight, the ALJ stated in his decision:

> Karen Thomas, a licensed clinical social worker, completed a psychiatric/psychological impairment questionnaire relating to treatment between February 9, 2007 and August 15, 2008. The claimant's diagnosis was depression and alcohol and cocaine abuse – in remission. The claimant had no hospitalizations or emergency room treatment for this condition. The claimant was noted to have moderate limitations in understanding and memory; moderate limitations in sustaining concentration and persistence; mild limitations in social interactions; and mild to moderate limitation in adaptation. [Thomas] noted the claimant was noted not to have a low IQ or reduced intellectual functioning. The claimant was noted to be incapable of even "low stress." Ms. Thomas opined that, although the claimant's treatment began in February 2007, his symptoms and limitations began, at the earliest, in 2004 or 2005 (Ex. 22F; Tr. 21).

The ALJ granted little weight to this opinion because he determined that Dr. Thomas' examination was undergone through representative referral, and in "connection with an effort to generate evidence for the current appeal." (Tr. 23). More importantly, in assessing the opinion of Thomas, the ALJ found that her "opinion contrasts sharply with the other evidence of record, which renders it less persuasive." (Tr. 23).

Additionally, the ALJ stated that the context in which this evidence was produced cannot be ignored. The ALJ concluded,

> [t]he possibility always exists that Ms. Thomas may express an opinion in an effort to assist a patient with whom she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their treating source, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension…While it is difficult to confirm such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. (Tr. 23).

In articulating good cause for discounting the opinion of Dr. Thomas, the ALJ supports his findings on a factual determination that Dr. Thomas' opinion departs substantially from all other medical opinion and evidence of record. It is clear that Dr. Thomas' opinion contradicts the evidence of record and may have been based upon sympathy for the Plaintiff. Therefore, the Court finds that the ALJ granted proper weight to Dr. Thomas.

Furthermore, the record shows that Dr. Thomas is not a treating source as defined by the regulations. See 20 C.F.R. § 404.1513(a) (treating sources are licensed physicians, licensed psychologist, licensed optometrists, licensed podiatrists and qualified speech pathologists for purposes of establishing language impairments). Dr. Thomas was appointed as Plaintiff's therapist through representative referral. Although, Dr. Thomas has a doctorate of social work she is not considered a treating psychiatrist/psychologist, but a licensed clinical social worker, referred by counsel. See Brandt v. Astrue, 2010 WL 746446 * (M.D. Fla. March 3, 2010) (holding that a social worker is not an acceptable treating source; but rather is considered an "other source" under the Regulations). Therefore, Dr. Thomas is not considered an acceptable medical source and, her opinion is not entitled to any special deference or consideration. Id.

The ALJ also considered the opinions of the State Agency Physicians in making his RFC determination. The ALJ stated "[t]he residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.'" (Tr. 24). The ALJ noted that the State Agency Physicians' opinions do not as a general matter deserve as much weight as those of examining or treating physicians, however, the ALJ stated that State Agency Physician's opinions do deserve some weight, "particularly in a case like this in which there is a number of other reasons to reach similar conclusions. . . ." (Tr. 24). State Agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. Harrison v. Commissioner, 2011 WL 899364 * 6 (M.D. Fla. March 14, 2011) (citing C.F.R. §404.1527(f)(2)). Thus, relying on the State Agency physicians in this instance constitutes substantial evidence.

In this case, the ALJ makes his RFC determination based upon all the relevant evidence of a Plaintiff's remaining ability to do work despite his impairments. Randolph v. Astrue, 2008 WL 4148518 *2 (11th Cir. Sept. 10, 2008) (citing Lewis, 125 F.3d at 1440). Thus, it is not error for an ALJ to consider the record as a whole and subsequently rely on only the relevant pieces of the record in making an RFC determination. It is clear from the ALJ's decision that he thoroughly considered the Plaintiff's entire medical history and the opinions of all the doctors in order to make his RFC determination that Plaintiff could do light and sedentary work and this determination is supported by substantial evidence in the record. Thus, the ALJ's granting of little weight to Dr. Segall and Dr. Thomas is not in error.

*(2) Whether the ALJ Erred in His Credibility Determination of Watt's Testimony*

Specifically, Plaintiff argues that the ALJ found Mr. Watt's testimony was not credible;

however the ALJ failed to provide a rationale that is sufficiently specific or legitimate to find the determination was not arbitrary. Plaintiff also argues that the ALJ's inference of 'irregular treatment suggestive of less severe symptoms' is at odds with the treatment record. As grounds, Plaintiff states "to ignore more sustained periods of compliance would be to unfairly weigh the limited instances of his non-compliance." Plaintiff concludes that the ALJ's adverse credibility determination cannot be said to be supported by substantial weight.

In response, the Commissioner argues that the ALJ's credibility finding is supported by substantial evidence. As grounds, he states that the ALJ properly considered Plaintiff's treatment history and activities when assessing the credibility of his allegations, and Plaintiff's failure to follow treatment suggest that his condition was not as limiting as he claimed. The Commissioner further states that the ALJ properly noted Plaintiff's noncompliant treatment and that Plaintiff had experienced some relief of his symptoms with medication when he did follow treatment. Thus, the ALJ's RFC findings were supported by substantial evidence.

Based upon the medical evidence and the testimony provided at the hearing, the ALJ determined the Plaintiff was capable of a wide range of light work. In his decision, the ALJ states:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above (RFC) assessment. (Tr. 22).

The ALJ further considers Plaintiff's testimony, and states:

> [t]he claimant testified to having pain in his legs and wrists; trouble waking up when he takes medication for pain, although medication takes the pain away; has trouble with vision; problems with numbness; and his diabetes is controlled with insulin. He reported

that he drives to his daily Alcoholics' Anonymous meetings…[and] has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. (Tr. 22).

Based upon this reasoning, the ALJ found that the medical evidence of record "does not support the impairment severity at the alleged onset date. While some of claimant's treating sources have tried to support a finding of disability as early as 2004, the record as a whole reflects significant gaps in the claimant's history of treatment." (Tr. 22). The ALJ also found that "[t]he claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above (RFC) assessment." (Tr. 22).

It is clear from the record, that the ALJ articulated specific reasons for discrediting Plaintiff's testimony. Included in this reasoning, the ALJ considered Plaintiff's daily activities and noted that the claimant is able to "complete daily living functions and function within a basic routine…[and] interact and relate with others socially and negotiate in the general community." (Tr. 21) The Plaintiff attended regular AA meetings, can drive himself to visit his mother and went to the library on a regular basis. (Tr. 154). He also said that he did regular household chores like laundry, washing dishes, and changing his sheets. (Tr. 32-33, 44-45, 152-154). While the performance of everyday tasks cannot be used to make a determination the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting that the ALJ properly discredited a treating physicians testimony by pointing out the contrasts in the claimants daily activities and the physicians diagnosis); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (upholding the ALJ's finding that the claimant's allegations of disabling pain were not credible because of her daily activities demonstrated otherwise). Thus, the ALJ did

not err when he considered the Plaintiff's activities when assessing his credibility regarding his disability claims.

The ALJ also considered the Plaintiff's non-compliance in making his credibility determination. The ALJ found:

> [t]here is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application....the record also reveals that the treatment, when he follows it, has been generally successful in controlling those symptoms...The claimant has admitted certain abilities which provide support for part of the RFC conclusion in this decision. (Tr. 22-23).

Here, the ALJ properly noted Plaintiff's non-compliance with treatment, and all the medical evidence of record when he concluded that Plaintiff's testimony is inconsistent with the disability claims. The ALJ further noted that there were gaps in the Plaintiff's treatment history. The Plaintiff alleged the onset of disability from May 1, 2004, but there were no medical records of any treatment until 2006. (Tr. 230-359). As such, the Court concludes that the ALJ properly considered Plaintiff's activities together with Plaintiff's admission of certain abilities, with the other evidence in accordance with the regulations, rulings, and Eleventh Circuit case law. See Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004). Therefore, the Court concludes the ALJ properly assessed the credibility of Mr. Watt's testimony in making his ultimate RFC determination.

### (3) Whether VE's Testimony is Supported by Substantial Evidence

Lastly, Plaintiff argues in his motion that this Court cannot determine the accuracy of the vocational expert's (VE) testimony regarding job requirements without having them identified by their code in the Dictionary of Occupational Titles (DOT). As grounds, Plaintiff states because

no testimony was given regarding the codes of those jobs, and because at least some jobs appear to require heavy exertion, the VE's testimony cannot be said to be supported by substantial evidence. (Doc. # 18, p. 16).

In response, the Commissioner stated that the VE specifically testified that the examples given were consistent with descriptions in the <u>DOT</u>. (Tr. 52). The Commissioner further argues that there is no law to support Plaintiff's contention that an ALJ, or a VE, is required to cite to a <u>DOT</u> section when identifying work a claimant can perform. Therefore, the ALJ was not required to cite to the <u>DOT</u> for work Plaintiff could perform.

In support of his arguments, the Commissioner cites to 20 C.F.R. § 404.1566(d),(e); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999) (noting that "the DOT is not the sole source of admissible information concerning jobs."); and, <u>Conn. v. Sec'y of HHS</u>, 51 F.3d 607, 610 (6th Cir. 1995) (holding that an ALJ properly relied on a VE's testimony even though neither the VE nor the ALJ relied on the <u>DOT</u> for job classifications.) (Doc. # 19, p. 6). Further, the Court of Appeals noted that the <u>DOT</u> states it is not a comprehensive source of information and that it should be supplemented with local job information. <u>Lipson v. Barnhart</u>, 347 F.Supp. 2d 1182, 1189 (M.D. Ala. 2004). "The VE provides this vital [supplemental] information". <u>Id</u>. at 1189. Therefore, an ALJ may rely on the VE's testimony even if it is inconsistent with the <u>DOT</u>. <u>Jones</u>, 190 F.3d at 1229.

In this case, the ALJ found after considering the claimant's age, education, work experience, and (RFC) in conjunction with the Medical-Vocational Guidelines, 20 C.F. R. Part 404, Subpart P, Appendix 2, that there are jobs that exist in significant numbers in the national

economy that the claimant can perform.   (Tr. 24).   See 20 C.F.R. § 404.1569(a).   In support of

this finding the ALJ states:

> [i]f the claimant can perform all or substantially all of the exertional
> demands at a given level of exertion, the medical-vocational rules
> direct a conclusion of either "disabled" or "not disabled," depending
> upon the claimant's specific vocational profile. (SSR 83-11).   (Tr.
> 24).   The ALJ also makes it clear that when a claimant cannot meet
> all or substantially all of the demands at each level of exertion, "the
> medical-vocational rules are used as a framework for decision
> making.   (Tr. 24).

Based upon these considerations, the ALJ asked the VE:

> …whether jobs exist in the national economy for an individual with
> the claimant's age, education, work experience, and (RFC).   The
> vocational expert testified that, given all of these factors, the
> individual would be able to perform the requirements of
> representative light occupations such as machine tender, nationally
> there are 38,000 and in the local economy there are 450; and packer,
> nationally there are 42,000 and locally there are 580; and sedentary
> occupations such as grader/sorter, nationally there are 49,000 and in
> the local economy there are 800; and finish machine tender,
> nationally there are 45,000 and locally there are 750.   (Tr. 25).

The ALJ found, in accordance with the VE's testimony:

>  …that there are no skilled or semiskilled jobs to which the
> claimant's skills would transfer, and that **the exertional and skill
> levels of the job example noted above are consistent with the
> descriptions of those jobs in the __Dictionary of Occupational
> Titles__**.   Based on a (RFC) for the light and sedentary work,
> considering the claimant's age, education, and work experience, a
> finding of "not disabled" is determined under the framework of
> Medical-Vocational Rule 202.21.   (Tr. 25).

This shows that the ALJ's findings were consistent with the DOT guidelines, and that his

finding of alternative jobs is supported by substantial evidence.   The ALJ states specifically in his

decision that the skill levels of the VE's job suggestions are consistent with the DOT descriptions.

Further, the ALJ's decision was consistent with the DOT, because there is no requirement in the

Eleventh Circuit for the ALJ to cite to the <u>DOT</u> for work Plaintiff could perform.  Additionally, because Plaintiff does not cite to any authority under the Eleventh circuit or other applicable law in support of its position, there are no grounds to find that the ALJ erred in his decision.

For these reasons, the ALJ's decision is supported by substantial evidence and decided under the proper legal standards.  The ALJ fully and adequately considered the severity or the effects of all the Plaintiff's impairing conditions, medical evidence of record, and testimony of the VE in making his determination.

Accordingly it is hereby

**ORDERED:**

The decision of the Commissioner is **AFFIRMED**.  The Clerk of Court is directed to enter judgment accordingly and close the file.

**ORDERED** at Fort Myers, Florida, this ___2nd___ day of March, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record